BILAL A. ESSAYLI
First Assistant United States Attorney
IAN V. YANNIELLO (Cal. Bar No. 265481)
Chief, National Security Division
AMANDA B. ELBOGEN (Cal. Bar No. 332505)
Assistant United States Attorney
National Security Division
DANIEL H. WEINER (Cal. Bar No. 329025)
Assistant United States Attorney
Transnational Organized Crime Section
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-3667/5748/0813
    Facsimile: (213) 894-0141
    E-mail:    ian.yanniello@usdoj.gov
               amanda.elbogen@usdoj.gov
               daniel.weiner@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 2:25-MJ-7759-DUTY |
|---|---|
| Plaintiff, | GOVERNMENT'S APPLICATION FOR REVIEW OF BOND ORDER (18 U.S.C. § 3145); EXHIBITS A-B |
| v. | |
| DANTE GAFFIELD, aka "Nomad," | |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, Assistant United States Attorneys Ian V. Yanniello, Amanda B. Elbogen, and Daniel H. Weiner, hereby submits the government's application (1) to review Magistrate Judge Pedro V. Castillo's order setting terms and conditions of release and (2) to request permanent detention of defendant DANTE GAFFIELD pending trial.

The government's application is based on the below memorandum of points and authorities, the files and records in this case, including the materials proffered in support of the government's request for

1   detention, and such further argument and evidence as may be presented

2   to the Court.

3   Dated: December 17, 2025        Respectfully submitted,

4                                   BILAL A. ESSAYLI
                                    First Assistant United States Attorney
5
                                    IAN V. YANNIELLO
6                                   Assistant United States Attorney
                                    Chief, National Security Division
7

8                                        /s/ Ian V. Yanniello
                                    _____
                                    IAN V. YANNIELLO
9                                   AMANDA B. ELBOGEN
                                    DANIEL H. WEINER
10                                  Assistant United States Attorneys

11                                  Attorneys for Plaintiff
                                    UNITED STATES OF AMERICA
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### MEMORANDUM OF POINTS AND AUTHORITIES

**I.   INTRODUCTION**

Defendant Dante Gaffield and his co-conspirators were arrested after they started building homemade improvised explosive devices ("IEDs") in the Mojave desert --- a concrete step in their terrorist plot to bomb at least five buildings on New Year's Eve.  Indeed, over the course of several weeks, defendant and his co-conspirators methodically planned their New Year's Eve attack: they selected targets; designed explosive devices; acquired bomb-making components; and then traveled to the desert to build and test their IEDs.

As set forth below, defendant was integral to the plot.  After learning about the bombing plan, defendant confirmed his intent to recruit additional participants and obtained materials to support the bombing operation, including burner phones so the co-conspirators could avoid law enforcement detention.  Defendant's history of violence --- which include charges for assaulting a police officer and a domestic violence restraining order --- further evidence defendant's dangerousness, and that there are no conditions of release that can adequately protect the public.

The facts before the Court also prove defendant is a significant flight risk.  The strength of the evidence against defendant --- including recordings showing defendant's active participation in the bomb plot --- coupled with the significant custodial sentence he will face if convicted, create significant incentive to flee prosecution.

Despite the obvious, palpable danger of releasing defendant on bond pending trial, the magistrate judge ordered defendant released on a $10,000 appearance bond with location monitoring.  At the government's request, the magistrate judge granted a stay of the

1

release order until 4 p.m. tomorrow (December 18).  The government respectfully submits the proposed bond is woefully inadequate to protect the public or ensure defendant's appearance at trial.  This Court should order him detained.

## II.  BACKGROUND

### A.  Defendant and His Co-Conspirators Are Arrested After Trying to Assemble Bombs in the Desert on December 12

On December 12, 2025, defendant and three co-conspirators --- AUDREY ILLEENE CARROLL also known as ("aka") "Asiginaak," ("CARROLL"), ZACHARY AARON PAGE aka "AK" ("PAGE"), and TINA LAI aka "Kickwhere" ("LAI") --- traveled to the Mojave desert to construct and test IEDs in furtherance of their New Year's Eve attack plan. (Complaint, ¶ 6.)  As the co-conspirators took steps to assemble the bombs, the FBI intervened and arrested the defendants.  (Id.)  The following day, the government obtained a criminal complaint charging the defendants with violations of 18 U.S.C. § 371 (Conspiracy) (Count One); and 26 U.S.C. § 5861(d) (Possession of Unregistered Destructive Device) (Count Two).  The government intends to pursue additional charges in the coming days.

### B.  The Desert Bomb Testing Was Part of the Co-Conspirators Plan to Blow Up U.S. Businesses on December 31

As set forth in the complaint, in late November 2025, CARROLL, a member of the Turtle Island Liberation Front ("TILF"),[1] provided a Confidential Human Source ("CHS") an eight-page, handwritten document titled "OPERATION MIDNIGHT SUN" that described a bombing plot.

---

[1] According to open-source information and other evidence gathered during the investigation, TILF is an anti-capitalist, anti-government, anti-Israel movement that advocates for violence against United States officials.  (Complaint, ¶¶ 8-9.)

Another TILF member known as "AK," who was later identified as PAGE, was also present during the meeting.  (Complaint, ¶ 5.)

The bombing plan was detailed and calculated.  Specifically, the plan contemplated planting backpacks with "ieds," or Improvised Explosive Devices, to be simultaneously detonated at five or more locations in Southern California targeting two U.S. companies at midnight on New Year's Eve 2025.  (Id.)  The handwritten plan stated the "ieds" would be "complex pipe bombs," included instructions on how to manufacture the bombs, and included guidance to avoid leaving evidence behind that could be traced back to the co-conspirators.  CARROLL also discussed with the CHS the prospect of testing the explosives "in the desert" in mid-December 2025.  (Id.)

Since the initial meeting where the bomb plot was discussed, CARROLL and PAGE recruited other co-conspirators to the plot, including defendant and LAI.  (Id., ¶ 6.)  On or about December 7, 2025, the CHS and an undercover law enforcement officer ("UCE") met with defendant, CARROLL, and PAGE.  CARROLL stated she had "the plan" and handed it to defendant, which he and the UCE both reviewed.  (Id., ¶ 17(a).)  Following defendant's review of the attack plans, CARROLL asked him whether some of his "comrades" would be on his team.  Defendant responded by confirming he would see if others were interested in participating in the plot.  (Id., ¶ 17(b).)  The conspirators then discussed the operation, including other co-conspirators who would participate in the attack and bomb-making components that CARROLL had already acquired.  (Id., ¶ 17(c)-(f).)  During the meeting, the conspirators also discussed obtaining guns, seeking firearms training, and plans for future attacks after the New Year's Eve bombings, namely, plans to commence targeting U.S.

3

Immigration and Customs Enforcement ("ICE") agents and vehicles with pipe bombs beginning in January or February 2026, with CARROLL noting "that would take some of them out and scare the rest of them."  (Id., ¶ 17(g)-(i).)

### C. Defendant and His Co-Conspirators Use an Encrypted Messaging Application to Continue Planning the Bombing Attack

The conspirators, including defendant, CARROLL, PAGE, and LAI, used a messaging group on the Signal application titled, "Order of the Black Lotus" to further their terror plot.  For example, on December 5, 2025, CARROLL wrote that the Black Lotus Signal group was "our group for everything radical[.]" (Id., ¶ 18.)

Among other things, the co-conspirators used the Black Lotus group chat to discuss the bombing plot, including their plan to test explosive devices in the Mojave desert on December 12, 2025. Specifically, on December 5, 2025, CARROLL forwarded instructions to the CHS for the desert explosive testing that were originally posted in the Black Lotus group by PAGE.  The instructions included geocoordinates for the planned camp site, which correspond to a location in the Mojave Desert, specifically the Lucerne Valley, California.  The instructions included a screenshot of a satellite map with markings depicting "where we will set up camp (C on the map above) and where we will test (T on the map above)."  (Id.)[2]

---

[2] The co-conspirators also discussed bringing large PVC pipes to the desert for the testing.  For example, in response to CARROLL asking the group "someone's getting the wider diameter pvc too right? I have 13 of the 1 inch / 2.5 cm diameter already cut," LAI responded: "Yeah I need to get that. Can you remind me what diameter I need to bring?" CARROLL responded, "3, 4, or 5 inch" and "maybe a small amount of each if you can find some."  (Id.)

1    PAGE instructed the group that they will only have two burner

2  phones to use in case of emergencies and for directions on the way

3  out.  Once everyone arrived, their phones would be put in a small

4  cardboard box completely sealed with aluminum in an effort to further

5  conceal their activities from law enforcement.  That same day,

6  GAFFIELD confirmed "I have a few burners / But im saving for the big

7  event / The big party [celebrate emoji]."  (Id.)

8      **D.    The Co-Conspirators Travel to the Desert to Test Their IEDs**

9      As discussed above, on December 12, 2025, defendant, CARROLL,

10  PAGE, and LAI traveled to the Mojave desert in two vehicles for the

11  purpose of building and testing IEDs.  After the conspirators arrived

12  at the desert, they began setting up a campsite, including tents and

13  table.  CARROLL, PAGE, and LAI all brought bomb-making components to

14  the campsite, including various sizes of PVC pipes, suspected

15  potassium nitrate, charcoal, charcoal powder, sulfur powder, and

16  material to be used as fuses, among others.  Some of those

17  bomb-making components are depicted in the photographs below:

18

 

1

2    Shortly after the conspirators began transferring the precursors

3    and other bomb-making components from their vehicles to the campsite,

4    CARROLL, PAGE, and LAI began setting up the bomb-making materials on

5    a table.  GAFFIELD and others set up a tent behind the table to keep

6    the bomb-making materials and the group shaded from the sun.  The

7    conspirators also took out a bag of charcoal and prepared to start

8    grinding one of the precursor powders that would be used to create an

9    explosive black powder.

10    After the UCE alerted law enforcement with a pre-determined

11    signal indicating that bomb testing was imminent, FBI personnel

12    intervened and placed defendant, CARROLL, PAGE, and LAI into custody.

13    **E.    Defendant Has an Active Arrest Warrant and a History of Crime, Including Violence Against Police Officers**

14

15    As set forth in the pretrial services report, defendant has

16    multiple arrests for violent offenses, including against a police

17    officer.  Specifically, defendant was charged in 2019 for Assault

18    with a Deadly Weapon with Force (Great Bodily Injury Likely) and

19    Obstructing a Police Officer.  Moreover, defendant currently has an

20    active warrant as reflected in the pretrial services report.  The

21    Superior Court of California has also issued a domestic violence

22    restraining order against defendant stemming from defendant

23    assaulting a former girlfriend.  See Pretrial Services Report at 4;

24    Ex. B [Permanent Restraining Order issued on December 16, 2025].[3]

25

26

27 _____

28    [3] At the time the Pretrial Services Report was drafted, there was a TRO in place. Exhibit B is the Permanent Restraining Order that was issued yesterday.

### F.    The Magistrate Judge Orders Defendant Released on Bond

On December 15, 2025, defendant had his initial appearance before the Honorable Pedro V. Castillo, United States Magistrate Judge.  During the hearing, Judge Castillo noted the following:

> I understand. I'm not ... working here in a vacuum. I know that ... there was actual meeting, actual planning, actual preparation, actual purchasing of items, uh, you know, actual communications, actual meetings, and, and, and which culminated in the arrest. So I understand the government's argument here. We're not just talking about people just, you know, talking, uh, on the internet or whatever form that they may be in communicating these days."  (Ex. A at 26:14.)

Nonetheless, Judge Castillo ordered defendant released on a $10,000 appearance bond signed by a family member, and ordered location monitoring as a condition of release.  At the government's request, Judge Castillo stayed his release order until 4:00 p.m. on December 18, 2025, pending an appeal by the government.  The government has concurrently filed an *ex parte* application requesting this Court stay the release order pending resolution of the appeal given the risk to the community should defendant be released.

## III. LEGAL STANDARD

This Court's review of the release order is de novo.  <u>United States v. Koenig</u>, 912 F.2d 1190, 1192 (9th Cir. 1990).  While the "district court is not required to start over . . . and proceed as if the magistrate's decision and findings did not exist," the district court "should review the evidence before the magistrate and make its own independent determination whether the magistrate's findings are correct, with no deference." <u>Id.</u> at 1193.  In support of that task, a district court may hold additional evidentiary hearings, if the court concludes such hearings would be helpful.  <u>Id.</u>

7

The Bail Reform Act requires pretrial detention of a defendant where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(e)(1).  Detention is appropriate where a defendant is either a flight risk <u>or</u> a danger to the community; it is not necessary to prove both.  <u>United States v. Motamedi</u>, 767 F.2d 1403, 1406 (9th Cir. 1985).  The government must establish flight risk "by a preponderance of the evidence," <u>United States v. Santos-Flores</u>, 794 F.3d 1088, 1090 (9th Cir. 2015), or dangerousness "by clear and convincing evidence," <u>United States v. Hir</u>, 517 F.3d 1081, 1086 (9th Cir. 2008).  Four factors govern the analysis of whether release conditions will reasonably assure a defendant's appearance and the community's safety: (1) the nature and circumstances of the offense, (2) the weight of the evidence, (3) the history and characteristics of the defendant, and (4) the nature and seriousness of the danger that would be posed by the defendant's release.  18 U.S.C. § 3142(g); <u>United States v. Winsor</u>, 785 F.2d 755, 757 (9th Cir. 1986).

**IV.   ARGUMENT**

Each of these governing factors strongly weigh against defendant's release.  For the reasons explained below, this Court's independent analysis should lead to the conclusion that detention is appropriate.  Defendant is both a danger to the community and a risk of non-appearance.  Either basis is sufficient for this Court to detain defendant pending trial.

**A.   Defendant Presents an Extraordinary Danger to the Community**

The seriousness and danger of defendant's offense is clear. Defendant conspired with others to build IEDs and use them to attack

8

multiple U.S. businesses.  Few crimes present this level of danger and utter disregard for human life.  Indeed, the dangerousness of defendant based on his conduct in this case alone --- including his own, recorded admissions --- is more than sufficient to support detention.  But his history of violent acts further underscores his continued dangerousness.  Defendant has assaulted a police officer and engaged in domestic violence trigging a permanent five-year restraining order. See Ex. B.  Moreover, his dangerousness is amplified by defendant's apparent struggles with mental health issues.  See, e.g., United States v. Nguyen, 2024 WL 4584574, *7 (N.D. Cal. October 25, 2024) (finding danger was "compounded" by competency concerns affecting defendant's likely compliance with conditions); United States v. Petersen, 557 F. Supp. 2d 1124, 1132-32 (E.D. Cal. 2008) (finding danger in an impersonation of federal agent, extortion, and threats case even where defendant had no criminal history and long-standing local family and community ties, exacerbated by substance abuse).

This case, defendant's conduct, and his violent history fall within the heartland of circumstances where detention is patently necessary to protect the community.

   **B.   Defendant Presents a Substantial Flight Risk**

The statutory maximum term of imprisonment of the charge, significant evidence against defendant (including audio and video recordings of his violent intentions and admissions), and the potentially significant custodial sentence he will face if convicted, all support a conclusion that defendant poses a risk of non-appearance.  See Townsend, 897 F.2d at 995.  Indeed, the likelihood that he will receive a custodial sentence in this case

9

provides a strong incentive to flee.  See Santos-Flores, 794 F.3d at 1092 (recognizing that the defendant posed a flight risk because of, among other reasons, "the severity of the potential punishment and the weight of the evidence against him").  And as discussed in the preceding section, defendant's mental health issues and inconsistent information about it further amplifies the risk of non-appearance.

*     *     *

When there is "no condition or combination of conditions" that can adequately address the risk of flight or danger in this case, detention is appropriate.  See 18 U.S.C. § 3142 (e)(1).  Given all of the foregoing --- the serious charges related to defendant's bombing plot, defendant's history of violence and clear intention to carry out the attack, and the serious consequences that are likely to follow --- show that there are no conditions or combination of conditions to adequately protect the community or prevent defendant's flight from prosecution.

**V.    CONCLUSION**

For the foregoing reasons, the Court should order that defendant be permanently detained pending trial.

EXHIBIT A

[Audio file lodged manually]

# EXHIBIT B

**DV-130**

## Restraining Order After Hearing
(Order of Protection)

☒ Original Order    ☐ _____ Amended Order

Clerk stamps date here when form is filed.

Electronically FILED
Superior Court of California
County of Los Angeles
12/16/2025 10:01 AM
David W. Slayton
Executive Officer/Clerk of Court,
By E. Navarro, Deputy Clerk

**(1) Protected Person** *(name):* ▓▓▓▓▓▓▓▓▓▓ _____

**(2) Restrained Person**

*Full Name: Dante James Anthony  Gaffield AKA Dj
*Gender: ☒ M  ☐ F  ☐ Nonbinary  *Race: Hispanic
*Age: 24  *(estimate, if age unknown)* Date of Birth: ▓▓▓▓▓▓
Height: 5' 8"                  Weight: 250 lbs.
Hair Color: Black              Eye Color: Brown
Relationship to person in (1): Used to date
Address of restrained person: ▓▓▓▓▓▓▓▓▓▓
City: Los Angeles          State: CA    Zip: 90015

**(Information that has a star (\*) next to it is required** to add this order into a California police database. Give all the information you know.)

Fill in court name and street address:

**Superior Court of California, County of**

**LOS ANGELES**

7339 South Painter Avenue
Whittier, CA 90602
SOUTHEAST DISTRICT

Clerk fills in case number when form is filed.

**Case Number:**

**25WHR002373**

**(3) ☒ Other Protected People**

In addition to the person in (1), the following persons are protected by orders as indicated in (13) through (16).

Full name                          Relationship to person in (1)          Age

☒ Check here if you need to list more people. List them on a separate piece of paper, write "DV-130, Other Protected People" at the top, and attach it to this form.

**(4) Expiration Date**

This restraining order, except the orders noted below,* end on:

*(date):* _December 16, 2030_    at *(time):* _____    ☐ a.m. ☐ p.m. or ☒ midnight

- Custody, visitation, child support, and spousal support orders remain in effect after the restraining order ends. Custody, visitation, and child support orders usually end when the child is 18.
- If no date is written, the restraining order ends three years after the date of the hearing in (6)a.
- If no time is written, the restraining order ends at midnight on the expiration date.

**This order must be enforced throughout the United States. See page 10.**

**This is a Court Order.**

Judicial Council of California, courts.ca.gov
Rev. April 28, 2025, Mandatory Form
Family Code, § 6200 et seq.
Approved by DOJ

**Restraining Order After Hearing
(Order of Protection)
(CLETS-OAH) (Domestic Violence Prevention)**

**DV-130, Page 1 of 11**

→

LHI7542 LOS ANGELES

Case Number: 25WHR002373

## (5) ☐ Future Court Hearing

The ☐ person in ① ☐ person in ② must attend court on:

Date: _____  Time: _____ ☐ a.m. ☐ p.m.

Department: _____  Room: _____

to review *(list issues)*: _____

_____

## (6) Hearing

a. The hearing was on *(date):* 12/16/2025 with *(name of judicial officer):* M. Santos

b. These people attended the hearing *(check all that apply):*

☑ The person in ①    ☐ The lawyer for the person in ① *(name):* _____

☐ The person in ②    ☐ The lawyer for the person in ② *(name):* _____

## (7) Court's Decision

In making this order, the court has considered whether failure to make any of the orders requested might risk the safety of the person in ① or any children listed on form DV-105. If child or spousal support was requested, the court has considered whether failure to make support orders would risk the safety of the person in ① or any children listed on form DV-105.

---

**To the Person in ② :**

**The court has granted a long-term restraining order. See ⑦ through ㉛ . If you do not obey these orders, you can be charged with a crime, go to jail or prison, and/or pay a fine. It is a felony to take or hide a child in violation of this order.**

---

**This is a Court Order.**

Restraining Order After Hearing
(Order of Protection)
(CLETS-OAH) (Domestic Violence Prevention)

LHI7542 LOS ANGELES

Case Number: 25WHR002373

**⑧ No Firearms (Guns), Firearm Parts, or Ammunition**

   a. You cannot own, possess, have, buy or try to buy, receive or try to receive, or in any other way get any prohibited item listed below in b.

   b. **Prohibited items are:**

      (1) Firearms;

      (2) Firearm parts, meaning receivers, frames, and any item that may be used as or easily turned into a receiver or frame (see Penal Code section 16531); and

      (3) Ammunition.

   c. Within 24 hours of receiving this order, you must sell to or store with a licensed gun dealer, or turn in to law enforcement, any prohibited items you have in your immediate possession or control.

   d. If law enforcement asks you for your prohibited items, you must turn them over immediately.

   e. Within 48 hours of receiving this order, you must file a receipt with the court that proves all prohibited items have been turned in, sold, or stored. (You may use form _DV-800/JV-270, Receipt for Firearms, Firearm Parts, and Ammunition_.) If law enforcement served you with the restraining order, you must give a copy of the receipt to that law enforcement agency.

   f. ☐ Limited Exemption: The judge has made the necessary findings to grant an exemption under Family Code section 6389(h). Under California law, the person in ② is not required to relinquish this firearm _(make, model, and serial number of firearm):_ _____ but must only have it during scheduled work hours and to and from their place of work. Even if exempt under California law, the person in ② may be subject to federal prosecution for possessing or controlling a firearm.

**⑨ ☐ Restrained person has prohibited items**

The court finds that you have the following prohibited items:

   a. **Firearms and/or firearm parts**

| Description _(include serial number, if known)_ | Location, if known | Proof of compliance received by the court |
|---|---|---|
| (1) _____ | _____ | ☐ _(date):_ _____ |
| (2) _____ | _____ | ☐ _(date):_ _____ |
| (3) _____ | _____ | ☐ _(date):_ _____ |
| (4) _____ | _____ | ☐ _(date):_ _____ |

**This is a Court Order.**

LHI7542 LOS ANGELES

Case Number: **25WHR002373**

⑨ The court finds that you have the following prohibited items:

b. **Ammunition**

| Description | Amount, if known | Location, if known | Proof of compliance received by the court |
|---|---|---|---|
| (1) _____ | _____ | _____ | ☐ *(date):* _____ |
| (2) _____ | _____ | _____ | ☐ *(date):* _____ |

☐ Check here to list additional items. List them on a separate piece of paper, write "DV-130, Restrained Person Has Prohibited Items" at the top, and attach it to this form.

⑩ ☐ **Restrained Person Has Not Complied With Surrendering Prohibited Items**

a. The court finds that you have not fully complied with the orders previously granted on *(date):* _____
The court has not received a receipt or proof of compliance for all the items listed in ⑨.

b. Notify Law Enforcement
The court will immediately notify the following law enforcement agency of this violation
*(law enforcement agency or agencies):* _____

c. Notify Prosecutor
The court will immediately notify the following prosecuting agency of this violation
*(prosecuting agency):* _____

⑪ ☐ **Court Hearing to Review Firearms (Guns), Firearm Parts, and Ammunition Compliance**

You must attend the court hearing in ⑤ to prove that you have properly turned in, sold, or stored all prohibited items (described in ⑧b) you still have or own, including any items listed in ⑨. If you do not attend the court hearing listed in ⑤, a judge may find that you have violated the restraining order and notify law enforcement and a prosecuting attorney of the violation.

⑫ **No Body Armor**

You cannot own, possess, or buy body armor (defined in Penal Code section 16288). You must relinquish any body armor you have in your possession.

**This is a Court Order.**

LHI7542 LOS ANGELES

Case Number: **25 WHR002373**

---

⑬ **Cannot Look for Protected People**

You must not take any action to look for any person protected by this order, including their addresses or locations.

☐ If checked, this order was not granted because the court found good cause not to make this order.

⑭ ☑ **Order to Not Abuse**

**You must not do the following things to the person in ① and any person listed in ③:**

- Harass, attack, strike, threaten, assault (sexually or otherwise), hit, follow, stalk, molest, destroy personal property, keep under surveillance, impersonate (on the internet, electronically, or otherwise), block movements, annoy by phone or other electronic means (including repeatedly contact), or disturb the peace.

- "Disturb the peace" means to destroy someone's mental or emotional calm. This can be done directly or indirectly, such as through someone else. This can also be done in any way, such as by phone, over text, or online. Disturbing the peace includes coercive control.

- "Coercive control" means a number of acts that unreasonably limit the free will and individual rights of any person protected by this restraining order. Examples include isolating them from friends, relatives, or other support; keeping them from food or basic needs; controlling or keeping track of them, including their movements, contacts, actions, money, or access to services; and making them do something by force, threat, or intimidation, including threats based on actual or suspected immigration status. Coercive control includes reproductive coercion meaning controlling someone's reproductive choices, such as using force, threat, or intimidation to pressure someone to be or not be pregnant, and to control or interfere with someone's contraception, birth control, pregnancy, or access to health information.

⑮ ☑ **No-Contact Order**

a. You must **not contact** ☑ the person in ①,    ☑ the persons in ③,
   directly or indirectly, by any means, including by telephone, mail, email, or other electronic means.

b. ☐ Exception to 15a:
   (1) ☐ You may have brief and peaceful contact with the person in ① to only communicate about your children for court-ordered visits.
   (2) ☐ You may have contact with your children only during court-ordered contact or visits.
   (3) ☐ Other *(explain):* _____

c. Peaceful written contact through a lawyer or process server or another person for service of legal papers related to a court case is allowed and does not violate this order.

---

**This is a Court Order.**

**Restraining Order After Hearing
(Order of Protection)
(CLETS-OAH) (Domestic Violence Prevention)**

LHI7542 LOS ANGELES

Case Number: HRO02373

**(16) ☑ Stay-Away Order**

a. You **must** stay at least *(specify):* 100 yards away from *(check all that apply):*
   - ☑ Person in ①.
   - ☑ Home of person in ①.
   - ☐ Job or workplace of person in ①.
   - ☑ Vehicle of person in ①.
   - ☑ School of person in ①.
   - ☑ Persons in ③.
   - ☐ Children's school or child care.
   - ☐ Other *(specify):* _____

b. ☐ Exception to 16a:
   The stay-away orders do not apply:
   (1) ☐ For you to exchange your children for court-ordered visits. You must do so briefly and peacefully.
   (2) ☐ For you to visit with your children for court-ordered contact or visits.
   (3) ☐ Other *(explain):* _____

**(17) ☐ Order to Move Out**

You must move out immediately from *(address):*
_____

**(18) ☐ Other Orders**

_____

**(19) ☐ Child Custody and Visitation Order**

The judge has granted orders regarding minor children. The orders are included on **form DV-140**, and *(list other form):* _____

**(20) ☐ Protect Animals**

a. ☐ You must stay at least _____ yards away from the animals listed below.
b. ☐ You must not take, sell, hide, molest, attack, strike, threaten, harm, get rid of, transfer, or borrow against the animals.
c. ☐ The person in ① is given the sole possession, care, and control of the animals listed below.

| Name *(or other way to ID animal)* | Type of animal | Breed *(if known)* | Color |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

**This is a Court Order.**

**Restraining Order After Hearing
(Order of Protection)
(CLETS-OAH) (Domestic Violence Prevention)**



LHI7542 LOS ANGELES

**(21)** ☐ **Control of Property**

Only the person in ① can use, control, and possess the following property:

_____

_____

_____

_____

_____

**(22)** ☐ **Health and Other Insurance**

The person ☐ in ① ☐ in ② is ordered **not** to cash, borrow against, cancel, transfer, dispose of, or change the beneficiaries of any insurance or coverage held for the benefit of the parties, or their children, if any, for whom support may be ordered, or both.

**(23)** ☑ **Record Communications**

The person in ① may record communications made by the person in ② that violate this order.

**(24)** ☐ **Property Restraint**

The person ☐ in ① ☐ in ② must not transfer, borrow against, sell, hide, or get rid of or destroy any property, including animals, except in the usual course of business or for necessities of life. In addition, each person must notify the other of any new or big expenses and explain them to the court. (If the court granted the order in ⑮, the person in ② must not contact the person in ①. To notify the person in ① of new or big expenses, have a server mail or personally give the information to the person in ① or contact their lawyer, if they have one.)

**(25)** ☐ **Pay Debts (Bills) Owed for Property**

a.  You must make these payments until this order ends:

(1)  Pay to: _____  For: _____  Amount: $ _____  Due date: _____

(2)  Pay to: _____  For: _____  Amount: $ _____  Due date: _____

(3)  Pay to: _____  For: _____  Amount: $ _____  Due date: _____

b.  ☐ The court finds that the debt or debts listed above in ☐ a(1)  ☐ a(2)  ☐ a(3) were the result of abuse in this case, and made without the person in ①'s agreement.

**This is a Court Order.**

Rev. April 28, 2025     **Restraining Order After Hearing** **(Order of Protection)** **(CLETS-OAH) (Domestic Violence Prevention)**     DV-130, Page 7 of 11 →

LHI7542 LOS ANGELES

Case Number: 25WHR002373

**(26)** ☐ **Pay Expenses Caused by the Abuse**

You must pay the following:

Pay to: _____ For: _____ Amount: $ _____ Due date: _____

Pay to: _____ For: _____ Amount: $ _____ Due date: _____

Pay to: _____ For: _____ Amount: $ _____ Due date: _____

**(27)** ☐ **Child Support**

Child support is ordered on the attached <u>form FL-342</u>, *Child Support Information and Order Attachment* or *(list other form)*: _____

**(28)** ☐ **Spousal Support**

Spousal support is ordered on the attached <u>form FL-343</u>, *Spousal, Domestic Partner, or Family Support Order Attachment* or *(list other form)*: _____

**(29)** ☐ **Lawyer's Fees and Costs**

You must pay the following lawyer's fees and costs:

Pay to: _____ For: _____ Amount: $ _____ Due date: _____

Pay to: _____ For: _____ Amount: $ _____ Due date: _____

**(30)** ☐ **Batterer Intervention Program**

a. The person in **(2)** must go to and pay for a probation-certified 52-week batterer intervention program and show proof of completion to the court.

b. The person in **(2)** must enroll by *(date):* _____ or if no date is listed, must enroll within 30 days after the order is made.

c. The person in **(2)** must complete, file, and serve <u>form DV-805</u>, *Proof of Enrollment for Batterer Intervention Program.*

**(31)** ☐ **Transfer of Wireless Phone Account**

The court has made an order transferring one or more wireless service accounts from you to the person in **(1)**. These orders are contained on <u>form DV-900</u>, *Order Transferring Wireless Phone Account.*

**This is a Court Order.**

Rev. April 28, 2025

**Restraining Order After Hearing
(Order of Protection)
(CLETS-OAH) (Domestic Violence Prevention)**

DV-130, Page 8 of 11

LHI7542 LOS ANGELES

**Case Number:**

25WHR002373

(32) **Service** *(check a, b, or c)*

a. ☐ **No other proof of service is needed.** The people in ① and ② attended the hearing, either physically or remotely (by telephone or videoconference), or agreed in writing to this order.

b. ☑ **The person in ② was not present.** Proof of service of form DV-109 and form DV-110 (if issued) was presented to the court. *(Check all that apply):*

(1) ☑ This order can be served by mail. The judge's orders in this form are the same as in form DV-110 except for the expiration date. The person in ② must be served, either by mail or in person.

(2) ☐ This order must be personally served. The judge's orders in this form are different from the orders in form DV-110, or form DV-110 was not issued. The person in ② must be personally served (given) a copy of this order.

(3) ☐ The court has scheduled a firearms and ammunition compliance hearing. The person in ① must have a copy of this order served on the person in ② by:

(a) ☐ Personal service by *(date):* _____

(b) ☐ Mail at the person in ②'s last known address by *(date):* _____

c. ☐ **Proof of service of form FL-300 to modify the orders in form DV-130 was presented to the court.**

(1) ☐ The people in ① and ② attended the hearing or agreed in writing to this order. No other proof of service is needed.

(2) ☐ The person ☐ in ① ☐ in ② did not attend the hearing and must be personally served (given) a copy of this amended (modified) order.

(33) **No Fee to Serve (Notify) Restrained Person**

The sheriff or marshal will serve this order for free. If you want the sheriff to serve your papers, (1) complete form SER-001, *Request for Sheriff to Serve Court Papers*, and (2) give the completed form and a copy of this order to the sheriff.

(34) ☐ **Attached Pages**

All of the attached pages are part of this order.

a. Number of pages attached to this 11-page form: _____

b. Attachments include forms *(check all that apply):*
☐ DV-140  ☐ DV-145  ☐ DV-900  ☐ FL-341(C)  ☐ FL-342  ☐ FL-343  ☐ Other: _____

**Judge's Signature**

Date: _____12/16/2025_____



M. Santos
Commissioner

*Judge or Judicial Officer*

**This is a Court Order.**

**Restraining Order After Hearing
(Order of Protection)
(CLETS-OAH) (Domestic Violence Prevention)**

Case Number:

**25WHR002373**

---

**Certificate of Compliance With VAWA**

This restraining (protective) order meets all "full faith and credit" requirements of the Violence Against Women Act, 18 U.S.C. section 2265 (1994) (VAWA) upon notice of the restrained person. This court has jurisdiction over the parties and the subject matter; the restrained person has been or will be afforded notice and a timely opportunity to be heard as provided by the laws of this jurisdiction. **This order is valid and entitled to enforcement in each jurisdiction throughout the 50 states of the United States, the District of Columbia, all tribal lands, and all U.S. territories, commonwealths, and possessions and must be enforced as if it were an order of that jurisdiction.**

---

## Instructions for Law Enforcement

### Start Date and End Date of Orders

This order starts on the earlier of the following dates:
- The hearing date in ⑥a on page 2; or
- The date next to the judge's signature on this page.

This order ends on the expiration date in ④. If no date is listed, they end three years from the hearing date.

### Duties of Officer Serving This Order

The officer who serves this order on the Restrained Person must do the following:
- Ask if the Restrained Person is in possession of any of the prohibited items listed in ⑧b, or has custody or control of any that they have not already turned in.
- Order the Restrained Person to immediately surrender to you all prohibited items.
- Issue a receipt to the Restrained Person for all prohibited items that have been surrendered.
- Complete a proof of personal service and file it with the court. You may use form DV-200 for this purpose.
- Within one business day of service, submit the proof of service directly into the California Restraining and Protective Order System (CARPOS), including the serving officer's name and law enforcement agency.

### Enforcing the Restraining Order in California

Any law enforcement officer in California who receives, sees, or verifies the orders on a paper copy, in the California Law Enforcement Telecommunications System (CLETS), or in an NCIC Protection Order File must enforce the orders.

### Notice/Proof of Service

Law enforcement must first determine if the restrained person had notice of the orders. If notice cannot be verified, the restrained person must be advised of the terms of the orders. If the restrained person then fails to obey the orders, the officer must enforce them. (Fam. Code, § 6383.)

Consider the restrained person "served" (notified) if:
- The officer sees a copy of the *Proof of Service* or confirms that the *Proof of Service* is on file; *or*
- The restrained person attended the hearing (see ㉜) or was informed of the order by an officer. (Fam. Code, § 6383; Pen. Code, § 836(c)(2).) An officer can obtain information about the contents of the order in the California Restraining and Protective Order System (CARPOS). (Fam. Code, § 6381(b)–(c).)

---

## This is a Court Order.



LHI7542 LOS ANGELES

Case Number: **25WHR002373**

## Arrest Required if Order Is Violated

If an officer has probable cause to believe that the restrained person had notice of the order and has disobeyed the order, the officer must arrest the restrained person. (Pen. Code, §§ 836(c)(1), 13701(b).) A violation of the order may be a violation of Penal Code section 166 or 273.6.

## If the Protected Person Contacts the Restrained Person

Even if the protected person invites or consents to contact with the restrained person, the orders remain in effect and must be enforced. The protected person cannot be arrested for inviting or consenting to contact with the restrained person. The orders can be changed only by another court order. (Pen. Code, § 13710(b).)

## Child Custody and Visitation

Child custody and visitation orders are listed on form DV-140 or another attached form. If the judge made these orders, look at ⑮ and ⑯ of this order to see if the judge granted an exception for brief and peaceful contact with the person in ① as needed to follow court-ordered visits. Contact by the person in ② that is **not** brief and peaceful is a violation of this order.

## Conflicting Orders—Priorities for Enforcement

If more than one restraining order has been issued protecting the protected person from the restrained person, the orders must be enforced in the following priority (see Pen. Code, § 136.2 and Fam. Code, §§ 6383(h)(2), 6405(b)):

1. **Emergency Protective Order (EPO):** If one of the orders is an *Emergency Protective Order* (form EPO-001), provisions (e.g., stay-away order) that are more restrictive than in the other restraining/protective orders must be enforced. Provisions of another order that do not conflict with the EPO must also be enforced.

2. **No-Contact Order:** If a restraining/protective order includes a no-contact order, the no-contact order must be enforced. Item ⑮ is an example of a no-contact order.

3. **Criminal Protective Order (CPO):** If none of the orders includes an EPO or a no-contact order, the most recent CPO must be enforced. (Fam. Code, §§ 6383(h)(2), 6405(b).) Additionally, a CPO issued in a criminal case involving charges of domestic violence, Penal Code section 261, 261.5, or former 262, or charges requiring sex offender registration must be enforced over any civil court order. (Pen. Code, § 136.2(e)(2).) All provisions in the civil court order that do not conflict with the CPO must also be enforced.

4. **Civil Restraining Orders:** If there is more than one civil restraining order (e.g., domestic violence, juvenile, elder abuse, civil harassment), then the order that was issued last must be enforced. Provisions that do not conflict with the most recent civil restraining order must also be enforced.

*(The clerk will fill out this part.)*

**Instructions to Clerk:** You must give up to three free (certified, stamped, and endorsed) copies of this order to the protected party.



### —Clerk's Certificate—

I certify that this *Restraining Order After Hearing (Order of Protection)* is a true and correct copy of the original on file in the court.

Date: _DEC 1 6 2025_ _____, Clerk, by _____, Deputy

L. Ito

**This is a Court Order.**

MC-025

| SHORT TITLE: ▮ v. Gaffield | CASE NUMBER 25WHR002373 |

**ATTACHMENT** *(Number):* DV-130 Item 3 – Other Protected People

*(This Attachment may be used with any Judicial Council form.)*
Attachment to Form DV-130 (Restraining Order after Hearing)

| Full Name | How are they related to you? | Age |
|---|---|---|
| DENIED | DENIED | 32 |
| | | 71 |
| | Grandparent | 69 |
| | | 33 |
| DENIED | DENIED | 13 |
| | | ≈ 35 |

*(If the item that this Attachment concerns is made under penalty of perjury, all statements in this
Attachment are made under penalty of perjury.)*

Page 1____ of 1____

*(Add pages as required)*

Form Approved for Optional Use
Judicial Council of California
MC-025 [Rev. July 1, 2009]

**ATTACHMENT**
**to Judicial Council Form**

LHI7542 LOS ANGELES

www.courtinfo.ca.gov